UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EARL WADDELL, JR.,

    Plaintiff,

v.                                               Case No. 1:12-cv-1124
                                               Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on February 12, 1959 (AR 210).[1] He alleged a disability onset date of June 1, 2003 (AR 210). Plaintiff graduated from high school and had specialized job training while in prison in custodial maintenance and food technology/sanitation (AR 216). Plaintiff identified his disabling conditions as paranoia personality disorder, antisocial personality disorder, lower back sciatic nerve problem, arthritis, poor blood circulation on legs, migraine headaches, learning disability, hypertension and high cholesterol (AR 215). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 29, 2011 (AR 14-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since his SSI application date of May 28, 2010 (AR 16). Second, the ALJ found that plaintiff had severe impairments of: mild degenerative changes and mild scoliosis, lumbar spine; headaches; history of high blood pressure and obesity; mood disorder; personality disorder; and history of polysubstance abuse in reported remission (AR 16). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). In this regard, the ALJ reviewed Listings 12.04 (affective disorders), 12.08 (personality disorders) and 12.09 (substance addiction disorders) (AR 19). The ALJ decided at the fourth step as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following: he can lift and carry 20 pounds occasionally and 10 pounds frequently; he can sit 6 hours in an 8-hour workday; he can stand and/or walk 6 hours in an 8-hour workday; he requires a sit/stand at will option; he is limited to simple, routine and repetitive tasks; he is limited to jobs that entail no contact with the general public and only occasional supervision and occasional interaction with co-workers.

(AR 19). The ALJ also found that plaintiff had no past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled light work in the regional and national economies (AR 22-23). Representative occupations located in the lower half of the lower peninsula of Michigan include: inspector/checker/examiner (2,500 jobs); machine operator (2,000 jobs); assembler of small parts (3,000 jobs); and machine feeder

4

(3,000 jobs) (AR 22). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since May 28, 2010, the date the application for SSI was filed (AR 23).

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**Is there substantial evidence to support the Commissioner's burden to establish this claimant can perform work that exists in significant numbers in the national economy?**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ posed a hypothetical question to the VE which reflected plaintiff's RFC (AR 19, 59-60). In response, the VE testified that a person with such limitations could perform the following jobs: surveillance monitor (2,000 positions); inspector/checker/examiner (2,500 jobs); machine operator (2,000 jobs); assembler of small parts (3,000 jobs); and machine

feeder (3,000 jobs) (AR 60-61). In his decision, the ALJ accepted the VE's testimony with respect to all of the identified jobs except for surveillance monitor (AR 22).

Plaintiff contends that the ALJ's RFC determination limiting him "to jobs that entail no contact with the general public and only occasional supervision and occasional interaction with co-workers" is unsupported by the record. Plaintiff's Brief at p. 6. Plaintiff's appeal is limited to his alleged mental impairments. *Id.* He relies upon the reports of examining psychologists Steve Geiger, Ph.D. and H. Jin Lee, Ph.D. *Id.* at pp. 8-9.

In an examination performed on September 9, 2010, Steve Geiger, Ph.D., diagnosed plaintiff with a depressive disorder, poly substance-abuse dependence in sustained full remission (while in a halfway house environment and during urine drops), and anti-social personality disorder (AR 299). Dr. Geiger concluded that plaintiff could follow and understand instructions and could perform simple, routine tasks (AR 299). However, plaintiff would have difficulty handling work pressure and stress, and "could not effectively communicate with coworkers, customers and especially supervisors" (AR 299).

On September 25, 2010, a DDS psychologist, Leonard C. Balunis, Ph.D., reviewed plaintiff's medical records and determined that he had the mental RFC as follows:

> The claimant is able to understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled tasks i.e., work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with most changes in routine work settings. There are no problems with attention and there is sufficient concentration to perform simple 1-2 step tasks on a routine and regular basis.

(AR 71).

H. Jin Lee, Ph.D., examined plaintiff on August 10, 2010, August 31, 2010, and October 26, 2010 (AR 304-05). Plaintiff was tested during the last two examinations (AR 304-05). Dr. Lee provided the following summary of his findings:

> In summary, because Mr. Waddell did not appear to put forth his optimal effort on his cognitive tests, it is difficult to determine the presence of significant cognitive impairment. I make no attribution as to why his effort was suboptimal and do not understand that his current level of emotion distress may have affected his motivation and effort. His performance suggests that at least his language skills, simple information processing speed, and simple attention are within normal limits. It is quite possible that he does have a long-standing history of learning disorder and cognitive inefficiencies associated with emotional distress and possibly with vascular risk factors, but unfortunately, I could not verify them due to his inadequate effort.

(AR 306).

In addition, Dr. Lee noted that "it is likely that his symptoms of significant emotion disturbance are affecting his cognitive efficiency on a fluctuating basis, and therefore need to be treated first" (AR 306-07). Finally, Dr. Lee made a brief notation regarding plaintiff's reports, stating that "[a]lthough Mr. Waddell reported experiencing auditory hallucinations, these hallucinations seem to be mainly present when he experiences severe depressive episodes" (AR 307). This notation is apparently in response to plaintiff's report that he heard voices telling him to "go and use drugs" and "get high and steal" (AR 304). Significantly, while plaintiff reported experiencing auditory hallucinations to Dr. Lee, he made no such report to Dr. Geiger. On the contrary, upon examination by Dr. Geiger, plaintiff *denied* having any hallucinations (AR 297).

The ALJ reviewed plaintiff's examination by Dr. Geiger, which he summarized as follows:

> The Administration ordered a September 2010 examination with S. Geiger, Ph.D., in the course of which the claimant was tangential and verbal. The claimant alleged depressed and anxious mood. His recent memories were limited. The claimant's general fund of information, and immediate and past memories were

7

reasonably preserved. He completed calculations accurately. The claimant's psychomotor activity was within normal limits. The claimant's grooming and hygiene were good, and he interacted in a pleasant, friendly and well-mannered fashion. The claimant was in contact with reality and correctly oriented, and he manifested no perceptual disturbances. Characterizations of the claimant's condition included depressive and anti-social personality disorders, and polysubstance abuse in remission (Exhibit 5F).

(AR 17).

The ALJ also reviewed Dr. Lee's opinions, stating in pertinent part:

The claimant underwent neuropsychological evaluations during August and October 2010 meetings with H. Jin Lee, Ph.D. The claimant exhibited dysthymic mood and somewhat flat affect. The claimant's gait was slow but steady, and his grooming was good. The claimant was properly oriented, and his thoughts were directed and coherent. His prosody of speech was appropriate. The claimant's tests of language skills, simple information, processing speed and simple attention were within normal limits. The doctor remarked that further assessments, including the claimant's cognitive functioning, could not be adequately appraised. This was due to the fact the claimant resigned easily on tasks; that he put forth less than optimal effort; and seemed to deliberately choose to portray himself as impaired. Diagnoses included depressive, anxiety and personality disorders, as well as history of polysubstance abuse (Exhibit 6F).

(AR 18).

After reviewing the evidence, the ALJ determined to assign some weight to the opinions expressed by Drs. Geiger and Balunis:

The undersigned assigns some weight to consultative evaluator Geiger, and a nonexamining Disability Determination Service (DDS) psychologist. These clinicians found that the claimant had medically determinable mental impairments, but retained the ability to perform simple and routine work tasks, that involved limited interpersonal contact. This viewpoint is reasonable, and well supported by the record as a whole. There is no "medical" opinion affiliated with the claimant's exertional abilities.

(AR 21).

Based on this record, which does not include an opinion by a treating physician or psychologist with respect to plaintiff's mental impairments, the ALJ could rely on the opinions

expressed by Drs. Geiger and Balunis. An ALJ can rely on consultative examinations as substantial evidence to support his decision. *See* 20 C.F.R. § 416.927; *Cutlip*, 25 F.3d at 287. While the opinions of the examining and non-examining psychologists may differ, "[i]t is the Commissioner's function to resolve conflicts in the medical evidence." *Gribbins v. Commissioner Social Security Administration*, 37 Fed. Appx. 777, 780 (6th Cir. 2002), citing *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). *See, e.g., Bradley v. Secretary of Health & Human Services*, 862 F.2d 1224, 1227-28 (6th Cir. 1988) ("[a]lthough the record is replete with inconsistent medical reports and [the claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence"). An ALJ may also rely on the opinions of the non-examining state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. § 416 927(e)(2) (ALJ's "will consider opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts"); 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation").

Finally, plaintiff raises two brief arguments with respect to the vocational evidence developed at the hearing. First, plaintiff contends that his criminal record would prevent him from performing the security (surveillance) monitor positions. Plaintiff's contention is without merit. Although the VE identified 2,000 surveillance monitor positions, the ALJ did not include those particular positions in his findings at Step 5 of the sequential evaluation (AR 22-23, 60-61). Second, plaintiff contends that the VE's testimony did not address his antisocial personality disorder. It is not necessary for the VE to address plaintiff's underlying medical condition. Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other

9

substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: March 17, 2014	/s/ Hugh W. Brenneman, Jr.
	HUGH W. BRENNEMAN, JR.
	United States Magistrate Judge